**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| In re: Keith L. Hector,<br>Debtor | BK No. 16-10026<br>Chapter 7 |

| | |
|---|---|
| Herman T. Cook,<br>    Plaintiff<br>v.<br>Keith L. Hector,<br>    Defendant | A.P. No. 16-01004 |

## DECISION AND ORDER

Plaintiff Herman T. Cook seeks a determination that the debt owed to him by Debtor-Defendant Keith L. Hector is not dischargeable under 11 U.S.C. § 523(a)(2)(B), alleging that Mr. Hector's debt was obtained by use of a false written statement regarding his financial condition.[1] Throughout this matter both parties have proceeded *pro se*, including at the trial on the merits held on August 24, 2017. They were also the only witnesses at the trial. After careful consideration of the testimony and the exhibits submitted into evidence, the Court determines that the debt is dischargeable. This decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052.

**I.    Jurisdiction**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 157(a) and 1334, and Rule 109(a) of the local rules of the United States District Court for the District of Rhode Island. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

**II.    The Rental Transaction**

The parties are in agreement about most of the events underpinning this dispute. Mr.

---

[1] Unless otherwise indicated, the terms "Bankruptcy Code," "Chapter," "section" and "§" refer to Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq*., as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub L. No. 109-8, 119 Stat. 37. References to the "Bankruptcy Rules" or "Rule" shall mean the Federal Rules of Bankruptcy Procedure.

Cook and his son own the apartment unit located at 325 Whipple Street, Fall River, Massachusetts ("Unit").[2] On September 1, 2011, they leased the Unit to Kristina Hadley under a written lease agreement ("Lease"). (Pl.'s Trial Ex. A-3.) In October of 2014, Ms. Hadley was dating Mr. Hector, whom Mr. Cook believed to be living in the Unit at that time. Based on this belief, Mr. Cook communicated to Ms. Hadley the necessity to formalize such an arrangement by naming Mr. Hector as a co-tenant under the Lease. Mr. Hector testified that he was not living at the Unit but would sometimes stay overnight on the weekends. Whether Mr. Hector then lived in the Unit full-time is immaterial to the Court's discharge determination.

Starting in December of 2014, Mr. Hector and Mr. Cook communicated by email regarding Mr. Hector's potential co-tenancy of the Unit. At that time, Ms. Hadley owed back rent for the Unit and faced financial difficulties that impeded her ability to pay the monthly rent. Before executing an addendum to the Lease ("Addendum," Pl.'s Trial Ex. A-2) to add Mr. Hector as a tenant, Mr. Cook asked him to complete the form rental application he typically used to evaluate prospective tenants. The rental application required a prospective tenant to provide personal and financial information. Mr. Hector completed and executed the application ("Rental Application") on December 15, 2014 and returned it to Mr. Cook. (Pl.'s Trial Ex. A-A1.) The Addendum was executed by Mr. Cook on December 25, 2014, by Mr. Hector on December 30, 2014, and by both Mr. Cook's son and Ms. Hadley on December 31, 2014. (Pl.'s Trial Ex. A-2.) In January of 2015, Mr. Hector moved into the Unit as a full-time co-tenant with Ms. Hadley under the Addendum.

After March of 2015, Mr. Hector and Ms. Hadley defaulted on their rent payment and, at some point, Mr. Hector moved out of the Unit. Mr. Cook sued Mr. Hector and Ms. Hadley in state court for back rent. In September of 2015, Mr. Hector executed a stipulated judgment for

---

[2] While both Mr. Cook and his son are owners of the Unit, only Mr. Cook is a plaintiff in this proceeding.

2

$2,003.00 and agreed to pay this sum to Mr. Cook. (Pl.'s Trial Ex. C.) Subsequently, Mr. Cook also obtained a judgment in the amount of $1,815.00 against Mr. Hector for damage to the Unit. (Pl.'s Trial Ex. D.) This matter is before the Court because Mr. Hector failed to pay the judgments, which he listed as debts on his bankruptcy schedules. This is where the parties' accounts of the facts diverge—Mr. Cook asserting that Mr. Hector intentionally made material misrepresentations on the Rental Application regarding his financial obligations, and Mr. Hector denying any such misrepresentations and any intent to deceive Mr. Cook.

### III.    The Elements of § 523(a)(2)(B)

As noted earlier, Mr. Cook relies upon the discharge exception set forth in Bankruptcy Code § 523(a)(2)(B) to prevent the discharge of the debt Mr. Hector owes him. The Court is cognizant that exceptions to the general discharge provided a debtor under § 727 effectively limit the goal of providing a debtor with a "fresh start" through the discharge of prepetition debts. For this reason the exceptions to discharge enumerated in § 523(a) are "construed stringently and creditors must show that a debt 'comes squarely' within a particular exemption." *Privitera v. Curran (In re Curran),* 855 F.3d 19, 22-23 (1st Cir. 2017) (citing *McCrory v. Spigel (In re Spigel)*, 260 F.3d 27, 32 (1st Cir. 2001)). Section 523(a)(2)(B) excludes from discharge any debt:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . .

To prevail under this nondischarge provision a creditor must prove five elements: (1) the debtor made a written statement; (2) the statement concerned the debtor's financial condition; (3) the statement was materially false; (4) the creditor actually and reasonably relied on the false

3

statement; and (5) the debtor made the false statement with the intent to deceive the creditor. *Douglas v. Kosinski (In re Kosinski)*, 424 B.R. 599, 608 (B.A.P. 1st Cir. 2010).

A creditor can prove intent to deceive "through direct or circumstantial evidence," and for the purpose of § 523(a)(2)(B) such intent "may be inferred from the totality of the circumstances surrounding the debtor's acts, including the debtor's reckless indifference to, or reckless disregard of, the accuracy of the financial information submitted to the creditor." *Toye v. O'Donnell (In re O'Donnell)*, No. EP 12-015, 2012 WL 10819892, at *8 (B.A.P. 1st Cir. Dec. 5, 2012) (citations omitted).

As with all claims asserted under § 523(a), Mr. Cook bears the burden to prove each of these elements by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Palmacci v. Umpierrez*, 121 F.3d 781, 787 (1st Cir. 1997); *Keene v. Mugford (In re Mugford)*, 346 B.R. 284, 289 (Bankr. D. Mass. 2006) (stating that plaintiffs who seek a determination of nondischargeability of a claim under § 523(a)(2)(B) "bear the burden of proof on each element and must meet that burden by a preponderance of the evidence as to all elements").

While Mr. Hector clearly made a statement in writing arguably relating to his financial condition, the Court need not decide whether Mr. Cook reasonably relied on that statement because the Court finds that he did not prove by a preponderance of the evidence that the statement was materially false or that Mr. Hector made the statement with the intent to deceive him.

**IV.  Findings of Fact**

Based on the testimony of Mr. Cook and Mr. Hector as well as the trial exhibits, the Court makes the following findings of fact. Turning to the core of the dispute here, Mr. Cook

must establish not only that Mr. Hector misrepresented his financial condition on the Rental Application, but that the alleged misrepresentation was "materially false." Mr. Cook asserted that Mr. Hector lied on the Rental Application by failing to indicate that he had two dependent children and by omitting his "child support obligations." If the Court were to find that such omissions constitute misrepresentations, they would be objectively material as they would "misrepresent information of the type that normally affects the particular type of decision at issue." 4 *Collier on Bankruptcy* ¶ 523.08[2][b] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (also stating that "omission, concealment, or understatement of liabilities will ordinarily constitute a materially false statement"). Indeed, such regularly recurring financial obligations would have significantly impacted Mr. Hector's net income. And as Mr. Cook testified, it is important information he would have considered in determining Mr. Hector's financial ability to afford the monthly rent for the Unit, a critical factor on which he would have based his decision.

The problem for Mr. Cook is that the Court finds no such misrepresentations by Mr. Hector. Contrary to Mr. Cook's assertions, the Rental Application does not ask about a prospective tenant's dependents. Although Mr. Hector acknowledges that he is the father of young twins who live with their mother (to whom he is not married), the section of the Rental Application relied upon by Mr. Cook entitled "PROPOSED OCCUPANTS" requires only that the prospective tenant list the name, relationship, occupation, and age of each person who would be living at the rental unit. Nowhere in this section, or anywhere else on the Rental Application, does it require a listing of a prospective tenant's dependents. Mr. Hector completed this section listing himself and Ms. Hadley, identifying her relationship to him as "Girlfriend."

"[A] failure to speak becomes a misrepresentation by omission only if the context requires the debtor to speak (that is, to provide the missing information)." *In re Curran*, 855 F.3d

5

at 25. Because Mr. Hector's children did not live with him and were not going to be living in the Unit, he made no misrepresentation by omitting reference to them on the Rental Application.

The Court similarly finds no false representation in either Mr. Hector's listing as his only debt in the section of the Rental Application entitled "CREDIT CARD/FINANCIAL INFORMATION" a vehicle loan of $19,000.00, or in not referencing any child support debts or obligations on the line item in the subsection entitled "CHILD SUPPORT/OTHER CREDIT OWED." (*See* Pl.'s Trial Ex. A-1.) In an effort to establish the falsity of this representation, Mr. Cook submitted into evidence the second page of Mr. Hector's bankruptcy Schedule I filed on January 8, 2016, over a year after Mr. Hector's execution of the Rental Application. On that schedule Mr. Hector listed a domestic support obligation of $1,148.33 as a monthly payroll deduction. (Pl.'s Trial Ex. F-1.)

Mr. Cook repeatedly stated that the evidence he relies upon to prove his case is the omission on the Rental Application of any child support obligation but the inclusion over one year later of such obligation on Schedule I as a payroll deduction. This he maintains establishes that Mr. Hector intentionally "lied" on the Rental Application.[3] If this child support obligation had been listed on the Rental Application, Mr. Cook testified, he would not have allowed Mr. Hector to become a co-tenant of the Unit.

Mr. Hector countered that he truthfully completed the Rental Application because he had

---

[3] In his complaint, and initially in his closing argument at trial, Mr. Cook also argued that Mr. Hector "lied' about his financial condition on the Rental Application because he listed as his only indebtedness the vehicle loan when his bankruptcy schedules list "27 creditors in 12 states" as being owed money. But Mr. Cook did not submit any evidence of the existence of such debts to support his contention, let alone adduce evidence to bridge the time gap of over one year between the date of the Rental Application and the date of the filing of the bankruptcy schedules to demonstrate that debts listed on Mr. Hector's schedules existed at the time he executed the Rental Application. Upon inquiry by the Court, Mr. Cook stated that he was referring to the entirety of the bankruptcy petition and schedules consisting of 57 pages which he did not submit as an exhibit. The Court then advised him that, if he wished to pursue this line of argument, the Court could take notice of its docket and such schedules, but the evidence portion of the trial would have to be reopened for such submission and to afford Mr. Hector an opportunity to respond. He declined to do so, indicating on more than one occasion during the trial and at closing argument that the key to his case was the lack of disclosure by Mr. Hector of his "child support obligations."

no child support obligations at that time. There was, he testified, no child support obligation imposed upon him by any court order or written support agreement. He also explained that he is on very good terms with the mother of his children and they have a loose verbal understanding that he will help out financially as needed with the costs of the children. He stated that from time to time he would take the twins out, buy them things they needed, take their mother grocery shopping and pay the bill, and sometimes give her cash as needed. There was no set amount that he would provide. He summed up their arrangement as one in which they "just went with the flow."

Addressing his bankruptcy Schedule I, Mr. Hector acknowledged that he does not have a domestic support obligation deducted from his payroll and clarified that the amount listed is just "a rough estimate" of what he believes he spends towards his children under this loose arrangement with their mother. He testified that his bankruptcy lawyer advised him that this was the line item on the schedule where he needed to list this expense, even though it was not a formal domestic support obligation and was not deducted from his pay, because "there was no other place on the schedule to list" the expense.

As relevant here, the term "domestic support obligation" is defined by Bankruptcy Code §101(14A) as a debt that is:

> (A)    owed to or recoverable by . . . [a] child of the debtor or such child's parent, legal guardian, or responsible relative; . . .
> (B)    in the nature of alimony, maintenance, or support . . . of such . . . child of the debtor or such child's parent, without regard to whether such debt is expressly so designated; [and]
> (C)    established or subject to establishment before, on, or after [the petition date] by reason of applicable provisions of—
> > (i)    a separation agreement, divorce decree, or property settlement agreement;
> > (ii)    an order of a court of record; or
> > (iii)    a determination made in accordance with applicable nonbankruptcy laws by a governmental unit . . . .

7

Regardless of whether his lawyer's advice was accurate or appropriate, Mr. Hector's testimony is unrebutted and the Court finds his explanations credible. The Court further finds that at the time he completed the Rental Application, given his verbal, flexible understanding with his children's mother, he was under no legal or contractual obligation to provide regular on-going child support, and the monetary assistance he chose to provide was not in any set amount or payable on any particular date. Finally, the Court accepts as credible his explanation that he did not list the assistance he voluntarily provided for his children on the Rental Application because he was under no court or governmental order to provide regular child support. Nor is his interpretation of the term "child support" unusual or unreasonable for a lay person. For example, the internet search engine Google defines "child support" as "court-ordered payments, typically made by a noncustodial divorced parent, to support one's minor child or children." *See* Google, http://www.google.com (last visited Sept. 20, 2017).

In his closing argument, Mr. Cook urged the Court to reject Mr. Hector's testimony as untruthful, reiterated his contentions about the alleged misrepresentations on the Rental Application, and challenged Mr. Hector's account of his motivations and the reasons for the rent default. Mr. Hector testified that by becoming a co-tenant he sought to help Ms. Hadley with her financial situation, which in turn would benefit Mr. Cook. Stressing that it was never his intent to deceive Mr. Cook and that he had made no misrepresentations, he explained that both he and Ms. Hadley suffered financial setbacks after he moved into the Unit. More specifically, he testified that he became ill in February of 2016 and was hospitalized for a week in March of 2016, affecting his ability to work. During this time, Ms. Hadley lost her employment. All of this became "too much" for him and after that he moved out of the Unit. In his efforts to undermine this testimony, Mr. Cook noted that the exhibit Mr. Hector submitted into evidence to support his

account of illness did not show any charges for hospitalization and highlighted Mr. Hector's failure to pay him the agreed judgment amount after promising to do so.

Mr. Cook misapprehends the nature of this evidence. As Mr. Hector testified, his submission of a statement from Prima CARE PCA showing charges for several office visits and various diagnostic testing in February and March of 2016 was merely intended to corroborate his testimony of illness during these months and its impact on him after he moved into the Unit. (*See* Def.'s Trial Ex. H.) The Court finds it does just that. Nor is Mr. Hector's failure to pay the agreed judgment, entered into months after the submission of the Rental Application, indicative of untruthful testimony regarding his completion of that application. As the trier of fact, based on all the evidence submitted, including Mr. Hector's testimony and demeanor, the Court is simply not persuaded that Mr. Hector's testimony should be disregarded as not credible or unreasonable.

## V.    Legal Conclusions

The Court concludes that Mr. Cook has failed to prove by a preponderance of the evidence that Mr. Hector made materially false statements on the Rental Application or that he submitted the Rental Application with the intent to deceive Mr. Cook. Consequently, Mr. Cook has not established that Mr. Hector's debt to him is nondischargeable under § 523(a)(2)(B). Judgment shall enter in favor of Mr. Hector declaring that his prepetition debt owed to Mr. Cook is dischargeable and was discharged upon the entry of the Order of Discharge on April 5, 2016.

Date: September 21, 2017                                By the Court,

*Diane Finkle*

Diane Finkle
United States Bankruptcy Judge